# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

          Plaintiff,                           No.  CR 12-3109 JB

vs.

ERNESTO RODRIGUEZ,

          Defendant.

## DEFENDANT'S APPEAL OF A DETENTION ORDER

COMES NOW the Defendant Ernesto Rodriguez, by and through his counsel Assistant Public Defender Brian Pori and pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and 18 U.S.C. § 3145(b), to respectfully submit this appeal of an Order (Doc. 30) by the Honorable Lorenzo Garcia, United States Magistrate Judge, denying Mr. Rodriguez's request to be Released to a Third Party Custodian, either to his wife Lucina Chaides or to the Third Party Custody of the La Pasada Halfway House.  Mr. Rodriguez respectfully submits that the evidence is sufficient to demonstrate that there are less restrictive conditions available which will reasonably assure his appearance for all judicial proceedings and which will adequately protect the public, namely release to a third party custodian on the condition that Mr. Rodriguez surrender his United States Passport, agree to Home

Detention (with the exception of being allowed to leave his home for work, church worship and approved educational, therapeutic and community activities) submit to GPS monitoring and abide by any other condition established by this Honorable Court, including random drug and alcohol testing. In support of this Motion, counsel for Mr. Rodriguez states:

1.      Defendant Ernesto Rodriguez is a citizen of the United States who was born in Denver, Colorado on June 13, 1975. (See Exhibit A, Birth Certificate.)

2.      Although he left the United States at the age of two and was raised and educated in Juarez, México, Mr. Rodriguez returned to the United States in 1995 and has lived in the United States continuously since that time.

3.      Mr. Rodriguez currently lives in the Pajarito Mesa section of Albuquerque and he has lived on the Pajarito Mesa for more than ten years.

4.      Mr. Rodriguez is currently married to Lucina Chaides. Mr. Rodriguez also has three sons from a previous marriage who live with him and his ex-wife in Albuquerque. (See Exhibit B, Letters of Recommendation.)

5.      Throughout his time in the United States, Mr. Rodriguez has been regularly and gainfully employed. Mr. Rodriguez can provide this Honorable Court with proof of employment dating back to 1998. For example, in 1998 Mr. Rodriguez was employed with White Oak Construction Company. From 2001 through 2002 he

worked with Commercial Roofing LLC and in 2003 he was employed by Goodrich Roofing. He worked as a housekeeper at Presbyterian Hospital in Albuquerque from 2005 through 2006, then he was employed with A.S. Horner, Inc, and Altor Construction, Inc. from 2006 through 2007. In the period from 2007 through 2012, Mr. Rodriguez was employed as a commercial roofer, a landscaper and a construction worker, working for companies which have included Sequoia Landscaping, Everguard Roofing and AUI. Inc. Beginning in 2013, Mr. Rodriguez began his own business, Paisano Landscaping, and he has been self employed since that time.

6. Mr. Rodriguez has been convicted of only one previous criminal offense, arising out a misunderstanding involving his ex-wife in 2005. However, this offense led to the imposition of a conditional discharge in the Second Judicial District Court for the State of New Mexico and the case was ultimately dismissed in November of 2008. Other than this offense, Mr. Rodriguez has no criminal convictions and he has never had any documented failures to appear in court.

7. In the last few years Mr. Rodriguez has actively participated in a community church in the Pajarito Mesa, Jesuscristo es mi Refugio (Jesus Christ is My Refuge). Since his participation in this Church, Mr. Rodriguez has stopped drinking alcohol and he has developed a good reputation in his community as an honorable and decent man. (See Exhibit C, Letters of Recommendation.)

8. Mr. Rodriguez has been charged in Count VII of a multi-count indictment with possession of marijuana with the intent to distribute it (in violation of 21 U.S.C. § 841, subd. (a)(1) and (b)(1)[C]). (Doc. 9.) Mr. Rodriguez vigorously disputes these allegations and insists that he is not guilty of the charged crime. Although the Government has not yet provided him with discovery in this matter, it appears that the strength of the evidence in support of the allegation is not strong: while the Government alleges that Mr. Rodriguez was involved with others to distribute narcotics, there is no evidence that Mr. Rodriguez ever possessed any illegal drug or that he had any actual knowledge that he was ever facilitating a drug crime. Instead it appears that, at most, Mr. Rodriguez was an unknowing participant in a criminal offense without any knowledge of the crime or any intent to further its criminal objective.

9. Everyone who knows Mr. Rodriguez can attest that he is an honest, hardworking man who would never knowingly participate in a drug trafficking crime. Instead, community members describe Mr. Rodriguez as an exemplary person who is a good father, a good neighbor and a sterling example of the best attributes of his faith. Each of these people, some of whom have known Mr. Rodriguez all of his life, attest to the fact that the charges contained in the Count VII of the Grand Jury

Indictment are utterly inconsistent with Mr. Rodriguez's personal history and his positive characteristics.

10.     Mr. Rodriguez was arrested in March of 2015 when he was returning to the United States after visiting his sick mother in Juarez, México. Unlike every other defendant charged in the Indictment, Mr. Rodriguez has made no attempt to flee the jurisdiction of this Court or to avoid prosecution in any way. On the contrary, since the Indictment was returned Mr. Rodriguez has remained in the United States with his wife and sons, maintained regular employment and traveled regularly to the Republic of México on his U.S. Passport.

11.     Mr. Rodriguez respectfully submits that his strong ties to his community, his long and exemplary employment and residential history, his lack of any extant criminal convictions, and his complete lack of any present substance abuse issues together demonstrate that he can be safely released to a third party custodian in a manner which will assure his appearance at all future court proceedings and which will protect the public.

12.     Assistant United States Attorney Maria Armijo, counsel of record for the United States, has been informed of this Appeal of a Detention Order and defense counsel presumes that the Government opposes the Motion.

*Argument*

Ernesto Rodriguez is a United States citizen who has lived in Albuquerque, New Mexico for almost twenty years. In that time Mr. Rodriguez has married, raised three sons, started his own business and joined an evangelical church in the Pajarito Mesa section of Albuquerque. He has spent the last ten years at the same address and has a documented employment history that dates back to 1998.

Mr. Rodriguez now finds himself embroiled in an alleged criminal act which he did not commit. The strength of the evidence against Mr. Rodriguez for this offense is not strong. Therefore, Mr. Rodriguez respectfully submits that, under the totality of the circumstances present before this Honorable Court, he should be released to a third party custodian pending a trial where he intends to prove his innocence of the single charge lodged against him in the Grand Jury Indictment.

The Government cannot meet its burden to prove by a preponderance of the evidence that the release of Mr. Rodriguez to a third party custodian will not reasonably assure his appearance at all future court proceedings nor can the Government discharge its burden to prove by clear and convincing evidence that the release of Mr. Rodriguez to a third party custodian will not reasonably assure the safety of any other person and the community. Nor can the Government dispute the strong evidence of Mr. Rodriguez's positive history and good characteristics, his long

and stable residential and employment history or his strong family and community ties to Albuquerque.

The only credible argument the Government can advance in favor of Mr. Rodriguez's continued detention is that Mr. Rodriguez should be detained because of the nature of the offense. However, even this solitary argument ultimately withers under closer examination. Mr. Rodriguez respectfully submits that the Government's argument for continued detention is simply insufficient to overcome Ms. Rodriguez's presumption of innocence and this Court's obligation, under the Bail Reform Act, to release Mr. Rodriguez on the least restrictive combination of available conditions, including the requirement that the defendant "remain in the custody of a designated person who agrees to assume supervision and to report any violation of a release condition to the court." 18 U.S.C. § 3142, subd. [c][1][B][I].

## I.     Release to a Third Party Custodian Will Assure Mr. Rodriguez's Appearance and Protect the Public.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The pretrial detention statutes of the Bail Reform Act follow these principles. *Id*. Congress imposed procedural safeguards designed to limit detention to only those instances when it is clearly necessary. *United States v. Holloway*, 781 F.2d 124, 125-

126 (8th Cir. 1986); S. Rep. No. 225, 98th Cong. 1st Sess. 8 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3191 (recognizing the detention statute may be constitutionally defective if it "fails to provide adequate safeguards and does not limit pretrial detention to cases in which it is necessary to serve the societal interests it is designed to protect").

The statutory scheme set out in the Bail Reform Act favors pretrial release over detention. *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007); *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (en banc). Any doubts regarding release should be resolved in the defendant's favor. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). As a result, only in "rare" cases should pretrial release be denied. *Id*. *See also United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (pretrial detention is an exceptional step); *Sabhnani*, 493 F.3d at 75 (pretrial detention is appropriate for only a limited group of offenders); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc) (Congress intended that "very few" defendants would be subject to pretrial detention).

Mr. Rodriguez respectfully submits that he is not that "rare" offender who can be detained before trial without any meaningful consideration of release conditions. On the contrary, Mr. Rodriguez contends that he is a good and decent man who has been innocently caught up in circumstances beyond his control. That is why he

submits that, in light of his family and community ties, his extensive employment history and his positive personal attributes, he should be released to a third party custodian.

This Honorable Court is well familiar with the standards for considering pre-trial release. The Bail Reform Act explicitly provides that a judicial officer must consider various release options before ordering detention. 18 U.S.C. § 3142(a), (b) & (c). A defendant may be detained only if the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required [or] the safety of any other person and the community. . . ." 18 U.S.C. § 3142(e). The Act requires a reasonable assurance, not a guarantee. *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996). Indeed, Congress envisioned the fashioning of conditions allowing release even "where there is a substantial risk of flight." H. Rep. No. 1030, 98th Cong. 2d Sess. 15 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3198.

The burden is on the Government to prove the detention standard has been met. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). The Government must meet its burden with respect to risk of flight by a preponderance of the evidence and with respect to danger by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). Clear and convincing evidence

is evidence that "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

A rebuttable presumption favoring detention applies if, as reflected by the Grand Jury Indictment in this case, there is probable cause to believe the defendant committed an offense involving a drug trafficking crime. 18 U.S.C. § 3142(e)(3)(E). But the Tenth Circuit has made it clear that the burden on the defendant to overcome the presumption "is not heavy." *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991). The defendant need only produce some evidence to rebut the presumption. Once the defendant has met this burden of production, the presumption of detention remains a factor for the Court's consideration, but the ultimate burden of persuasion remains with the Government. *Id.* at 1354-1355.

Congress listed a number of factors that a court must consider in making the release determination. They are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, employment, community ties, criminal history and whether, at the time of the offense, the person was on probation, parole or conditions of release; and (4) the nature and seriousness

of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). This Honorable Court reviews de novo the Magistrate Judge's detention order. *United States v. Cisneros, supra*, 328 F.3d at 616, n. 1.

Mr. Rodriguez respectfully submits that, after careful consideration of all the relevant factors, this Honorable Court should find that, even though a presumption of detention may apply, Mr. Rodriguez has produced sufficient evidence to over come the presumption and the Government cannot meet its burden of proving that placement of Mr. Rodriguez in the custody of a third party custodian with home confinement, GPS monitoring and other stringent conditions will not reasonably assure Mr. Rodriguez's appearance in court or the safety of others. Instead, Mr. Rodriguez contends that the nature and circumstances surrounding this "C" level drug distribution offense, Mr. Rodriguez's history and characteristics, his lack of any extant criminal convictions, his strong family, employment and community ties and the considerable evidence available to support Mr. Rodriguez's protestations of innocence together justify his release to the third party custodian.

A. *The Government Cannot Meet its Burden to Prove by a Preponderance of the Evidence that Mr. Rodriguez's Release to a Third Party Custodian Under Home Detention with GPS Monitoring Will Not Reasonably Assure His Appearance.*

Only a "serious" risk of flight warrants detention. 18 U.S.C. § 3142(f)(2)(A); *United States v. Nwokoro*, 651 F.3d 108, 110 (D.C. Cir. 2011) (stressing the risk of flight must be serious). In this case, the Government has not shown there is any risk of flight. On the contrary, the evidence is clear that Mr. Rodriguez is the <u>only</u> defendant charged in the Indictment who has <u>not</u> <u>fled</u> the jurisdiction of the court. Mr. Rodriguez's family ties, his strong employment history, his community involvement with his church and his good reputation in his community together clearly demonstrate that Mr. Rodriguez will not flee from the custody of a third party custodian while on home confinement attached to a GPS monitor.

Mr. Rodriguez has strong and enduring ties to his community. As reflected in the attached letters of recommendation, Mr. Rodriguez's family, his fellow church members and people in the community who know Mr. Rodriguez well can all attest to the central role Mr. Rodriguez plays in the lives of people who live on the Pajarito Mesa in Albuquerque. These significant family and community ties provide powerful evidence that Mr. Rodriguez will surely not try to flee this Court's jurisdiction when he is residing in the custody of a third party.

Even absent these strong ties, it is abundantly clear that Mr. Rodriguez would have a very strong incentive to remain within the purview of this Court's jurisdiction, especially since his GPS monitor would give away his location in any event. Mr. Rodriguez's willingness to submit to GPS monitoring at his expense provides additional evidence that he is not likely to flee. *See United States v. Anaya*, 376 F. supp. 2d1261, 1264 (D.N.M. 2005) (defendant's long ties to current address favored release, despite defendant's ties to Mexico).

In addition, Mr. Rodriguez has been steadily employed throughout his life. Mr. Rodriguez has been gainfully employed during the last 20 years he has lived in Albuquerque and in the last few years he has started his own landscaping business. Mr. Rodriguez's steady employment history demonstrates that he is a responsible person who will follow the Orders of this Court if he is released to a third party custodian. *See Xulam*, 84 F.3d at 442 (steady employment is a factor that favors release); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (same); *United States v. Charley*, 2010 WL 4338094 at * 6 (that defendant "held a consistent job for approximately seven years" was a factor favoring release); *Anaya*, 376 F. Supp. 2d at 1264 (same where defendant had been "profitably employed").

Moreover, Mr. Rodriguez's lack of any extant criminal convictions provides further evidence of his stability and dependability. Although Mr. Rodriguez received

a conditional discharge for an alleged criminal offense in 2005, it is apparent that he has had no criminal violations of any kind in the last ten years.[1]  Mr. Rodriguez's history of being free from any criminal convictions provides additional evidence that Mr. Rodriguez is not a flight risk.  *See Xulam*, 84 F.3d at 442 (noting lack of criminal record as factor in favor of release); *Dominguez*, 783 F.2d at 707 (same); *Medina*, 2011 WL 3897709 at * 5 (same where the defendant had "a minimal criminal history").  Without any criminal convictions or concomitant failures to appear, the Government has no real basis for believing Mr. Rodriguez would attempt to abscond. *See United States v. Raymond*, 2004 WL 1368831, * 2 (10th Cir. June 18, 2004) (unpublished) (citing lack of failures to appear in support of affirming release order); *Nwokoro*, 651 F.3d at 110 (never failing to appear in court when notified favored release); *Medina*, 2011 WL 3897709 at * 4 (no history of failures to appear indicated defendant was not a serious flight risk); *United States v. Leyba*, 104 F.Supp.2d 1182, 1183-1184 (S.D. Ia. 2000) (defendant released in part because he had never fled from prosecution); *United States v. Dodge*, 842 F.Supp. 643, 645 (D. Conn. 1994) (defendant was not a flight risk where he had never been charged with failure to appear).

---

[1]  Mr. Rodriguez acknowledges that he was arrested for an alleged misdemeanor act of domestic violence in 2009 but notes that those charges were dismissed.

In addition, the conditions which Mr. Rodriguez recommends that this Honorable Court impose on him while he is released to a third party custodian are so sufficiently restrictive that flight would not be a viable option. If he is released to a third party custodian, Mr. Rodriguez will surrender his passport, agree to home detention, submit to GPS monitoring at his expense and agree to abide by any other reasonable restriction such as limiting his travel, preventing his association with identified individuals, submitting to random urinalysis testing and reporting as directed. All these limitations and obstacles to flight, in combination with Mr. Rodriguez's good character, make it highly unlikely that Mr. Rodriguez would attempt to flee. *See Raymond*, 2004 WL 1368831 at ** 2-3 (district court's "strict" conditions on defendant's release to the third party custody of his wife, which included electronic monitoring, restriction to the home except for certain purposes, Pretrial Services reporting requirement, and submission to drug and alcohol testing, ensured defendant would not flee); *Sabhnani*, 493 F.3d at 76-79 (parties' agreement to strict conditions that would assure defendants' appearance and defendants' willingness to abide by those conditions requires vacation of detention order).

All of these factors are sufficient to meet Mr. Rodriguez's burden of production and to overcome the presumption in favor of detention in this case. *Anaya*, 376 F. Supp. 2d at 1264 (defendant met his burden of production where he had resided in

New Mexico for a long time, most of his family resided in the area, defendant had a longstanding relationship with his wife, he was engaged in a marginally profitable business of his own and was willing to put up a $20,000 property bond, but had some ties to Mexico); *Medina*, 2011 WL 3897709 at ** 4-5 (presumption overcome where defendant had extensive family and community ties, had training as a firefighter and had a minimal criminal history with no failures to appear).  Therefore, the legislative intent and the plain terms of the Bail Reform Act, along with the constitutional imperatives of the Fifth and Fourteenth Amendment, together compel the conclusion that Mr. Rodriguez should be released to the a third party custodian.

Finally the strength of the evidence against Mr. Rodriguez is not sufficient to meet the Government's burden of showing that he would be a flight risk if he is released under strict conditions.  First, an *a fortiori* showing that relies only on the allegations in the Indictment is not enough to meet the Government's burden to prove there are no combination of conditions which will reasonably assure Mr. Rodriguez's appearance.  *See Sabhnani*, 493 F.3d at 76 (strong evidence of serious crime carrying long sentence is not itself enough to meet government's burden); *United States v. Simpkins*, 826 F.2d 94, 97 (D.C. Cir. 19870 (same).  Second, and more important, there is considerable evidence that, at most, Mr. Rodriguez was unknowingly and unintentionally involved in the alleged offense: there is no evidence that Mr.

Rodriguez was ever in possession of marijuana, that he delivered or received marijuana from anyone, or that he shared a criminal purpose with the other alleged participants. Instead, the allegations of the Indictment demonstrate nothing more than the unique circumstances which came together to embroil a good and decent man who was unwittingly ensnared in criminal conduct based on false representations by the co-participants.

Therefore, for all of these reason, this Honorable Court should reject the Government's claim that Mr. Rodriguez should be detained as a flight-risk. *See Charley*, 2010 WL 4338094 at * 5; *Anaya*, 376 F. Supp. 2d at 1264; *Medina*, 2011 WL 3897709 at ** 4-5; *Robertson*, 2008 WL 2565015 at * 2. On the contrary, this Honorable Court should release Mr. Rodriguez to a third party custodian because it is the least restrictive condition that is available to this Honorable Court which will assure his appearance at all future court proceedings.

> B. *The Government Cannot Meet its Burden to Prove by Clear and Convincing Evidence that Mr. Rodriguez's Release to a Third Party Custodian Under Home Detention with GPS Monitoring Will Not Reasonably Assure the Safety the Community.*

To justify the preventive detention portion of the Bail Reform Act, Congress reasoned:

> there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of

> stringent release conditions nor the prospect of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial.

S. Rep. No. 225, 98th Cong. 1st Sess. 6-7 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189. In short, in crafting the preventive detention sections of the Bail Reform Act, Congress had in mind the "worst of the worst" offenders.

Mr. Rodriguez does not even remotely fit into that "limited group of offenders" who should be detained prior to trial without conditions for the same reasons that he does not pose a flight risk. Indeed, there is no credible evidence of any kind (let alone clear and convincing evidence) to suggest that, if Mr. Rodriguez was released, he would pose a danger to anyone.

Mr. Rodriguez has no extant convictions for any criminal offense. *See Charley*, 2010 WL 4338094 at * 6 (lack of criminal history indicate defendant would not be a danger while on third party release). His strong family and community ties and his documented seventeen-year history of gainful employment further belie any suggestion that Mr. Rodriguez would be a danger to the community. *See Charley*, 2010 WL 4338094 at * 6 (employment for seven years and ten-year marriage are factors indicating defendant would not endanger community under conditions); *Anaya*, 376 F. Supp. 2d at 1264 (same conclusion regarding long ties to current

address and profitable employment); *Robertson*, 2008 WL 2565015 at * 2 (same conclusion regarding lifelong residence in community, history of construction employment and mother's support); *Thomas*, 2006 WL 140558 at * 7 (same conclusion regarding strong family ties evidenced by family support throughout proceedings, strong connections to local communities and solid employment record).

Moreover, for the same reasons advanced in arguing that Mr. Rodriguez would not pose a risk of flight, Mr. Rodriguez contends that the stringent release conditions he proffers almost eliminate any possible risk that he would endanger anyone. *See Raymond*, 2004 WL 1368831 at ** 2-3 (district court's "strict" conditions on defendant's release to the third party custody of his wife reasonably ensured defendant would not be a danger); *Medina*, 2011 WL 3897709 at * 5 (conditions of release, including prohibition on consumption of alcohol, and the willingness of family members to supervise defendant reasonably assured community's safety.) Together these factors are sufficient to overcome any presumption against release in this case based on a finding that Mr. Rodriguez would pose a danger to the community.

Once again the only factor which the Government can offer to support its request for continued detention is the fact of Ms. Rodriguez's arrest under dubious circumstances. These arguments are insufficient to justify Mr. Rodriguez's continued

detention as a danger to the community and are flatly at odds with Mr. Rodriguez's presumption of innocence. *See Raymond*, 2004 WL 1368831 at * 2 (government did not meet its burden to prove release conditions were insufficient to ensure the community's safety, where defendant had convictions for four felonies, three of which were violent crimes); *Charley*, 2010 WL 4338094 at * 5; *Anaya*, 376 F. Supp. 2d at 1264; *Medina*, 2011 WL 3897709 at * 5; *Robertson*, 2008 WL 2565015 at * 2. Therefore, the Government cannot proven by clear and convincing evidence that no combination of conditions will reasonably assure the safety of any other person or the community if Mr. Rodriguez was released to a third party custodian.

WHEREFORE, for all of the foregoing reasons, Defendant Ernesto Rodriguez respectfully requests that this Honorable Court release him to the third party custody of his wife, Lucina Chaides, or alternatively to the third party custody of the La Pasada Halfway House on such further terms and conditions as this Honorable Court may deem to be appropriate.

Respectfully Submitted,

/s/ *Brian A. Pori* filed electronically 4/10/15
     Brian A. Pori
     Assistant Federal Public Defender
     111 Lomas Blvd NW, Suite 501
     Albuquerque, N.M. 87102-2373
     (505) 346-2489 [telephone]
Counsel for Ernesto Rodriguez

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of April, 2015, I filed the foregoing

Defendant's Appeal of the Detention Order electronically through the CM/ECF

system, which caused a copy of the pleading to be served electronically on opposing

counsel of record addressed as follows:

Maria Armijo, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103

/s/ filed electronically 4/10/15
Brian A. Pori