# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No. CR 12-3109 JB-10

ERNESTO RODRIGUEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Motion *in Limine* to Preclude Questioning of Government Witnesses Regarding Personal Information and Request for Anonymous Testimony, filed June 26, 2015 (Doc. 86)("Anonymity MIL"); and (ii) the United States' Amended Motion *in Limine* for Pretrial Rule Excluding Irrelevant, Prejudicial, and Inadmissible Hearsay Statements, filed June 26, 2015 (Doc. 85)("Hearsay MIL").[1]  The Court held a hearing on July 2, 2015.  The primary issues are: (i) whether to permit one of Plaintiff United States of America's witnesses to testify under a pseudonym and to bar Defendant Ernesto Rodriguez from asking that witness any questions that would reveal identifying personal information about her; and (ii) whether to bar Rodriguez from eliciting, on cross-examination of the United States' witnesses, self-serving, exculpatory statements that he made to those witnesses -- even while allowing the United States to admit inculpatory statements that Rodriguez made to the same witnesses.  As to the first issue, the Court will allow the United States' witness to

---

[1]The Hearsay MIL is, as its full name suggests, an amended version of the earlier filed United States' Motion *in Limine* for Pretrial Ruling Excluding Irrelevant, Prejudicial, and Inadmissible Hearsay Statements, filed June 26, 2015 (Doc. 84).  The only difference between the amended and original versions appears to be that the amended motion contains a recitation of the United States' good-faith attempt to ascertain the Defendant's consent.  <u>See</u> Hearsay MIL at 6.

testify anonymously, but it will work with Rodriguez to ensure that he retains the ability to cross-examine the witness in a constitutionally adequate fashion.  The Court will thus grant the Anonymity MIL.  As to the second issue, the Court will not allow Rodriguez to elicit exculpatory hearsay statements, of which he is the declarant, on cross-examination of the United States' witnesses, even if those witnesses first testify about inculpatory statements that Rodriguez made while talking to them.  The Court will thus grant the Hearsay MIL.

## **FACTUAL BACKGROUND**

The Court sets forth these facts as the United States alleges them in its Superseding Indictment, filed July 24, 2014 (Doc. 9)("Indictment"), and the United States' Response to Defendant's Appeal of Detention Order, filed April 20, 2015 (Doc. 36)("Detention Appeal"),[2] bearing in mind, of course, that Rodriguez is presumed innocent of all charges, see Estelle v. Williams, 425 U.S. 501, 503 (1976)("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." (citing Coffin v. United States, 156 U.S. 432, 453 (1895))).  The Court recites the United States' version of the facts because the high burden of proof placed on it necessitates that it have a cogent, internally consistent version of events,[3] and not out of any predisposition to believe the

---

[2]The Indictment contains few facts about what Rodriguez is alleged to have done; it is, instead, replete with background information about the operations of the Juarez Cartel.  See Indictment at 1-6.  The Detention Appeal contains a more complete description of what the United States alleges Rodriguez did, so the Court will cite heavily to it in outlining the facts of the case.

[3]The defendant in a criminal case, on the other hand, need not present a cogent theory of the case or propose a comprehensive factual story.  He or she may sit back and attempt to poke holes in the United States' theory of the case, and need not put on any case, at all.  See United States v. Wittig, No. 03-40142-JAR, 2005 WL 758606, at *4 (D. Kan. Apr. 4, 2005) (Robinson, J.)("It is axiomatic that a defendant has a presumption of innocence, which means that a defendant need not present evidence, as the defendant has no burden of proof in a criminal case."  (footnote omitted)).

United States' side of the story.  See In re Winship, 397 U.S. 358, 365 (1970)("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In late 2013, the FBI was conducting an investigation involving the Vincente Carrillo Fuentes Organization, also known as the Juarez Cartel or La Linea.  See Indictment ¶ 1, at 1; Detention Appeal at 1.  Undercover agents were in contact with members of the Juarez Cartel and were arranging for the importation of cartel-produced cocaine and marijuana into the United States.  See Detention Appeal at 1.  Members of the Juarez Cartel provided the FBI with a 2004 Dodge Durango sport utility vehicle ("SUV"), and the undercover source was instructed to register the vehicle.  See Detention Appeal at 1.  Afterward, the undercover source would return the vehicle to the Juarez Cartel's representatives in Mexico, who would load it with marijuana and cocaine, and then transport it back into the United States with the drugs hidden inside.  See Detention Appeal at 1.  The FBI installed a tracking device in the SUV, and in December, 2013, a member of the Juarez Cartel took possession of the SUV and took it into Mexico.  See Detention Appeal at 1-2.

In February, 2014, FBI agents conducted an international controlled delivery from Juarez, Mexico, to Albuquerque, New Mexico.  See Detention Appeal at 2.  The SUV was delivered to the undercover agent on the Bridge of the Americas in El Paso, Texas.  See Detention Appeal at 2.  The undercover agent then drove the vehicle to Albuquerque and met with Rodriguez, who was going to take possession of the vehicle.  See Detention Appeal at 2.  A high-ranking member of the Juarez Cartel -- co-Defendant Jorge Olivas Nevarez, more commonly known as "Compa Chuy" -- had provided Rodriguez' telephone number to the undercover agent.  Detention Appeal

at 2.  See Indictment at 1.  Rodriguez met with the undercover agent and instructed the agent to

follow him to a hotel to spend the night, and he also paid the undercover agent $2,890.00, which

he had received from co-Defendant Guadalupe Prieto.  See Detention Appeal at 2; Indictment at

1.  Rodriguez indicated that he would pay the undercover agent the rest of the money owed to

him in the morning.  See Detention Appeal at 2.  While FBI agents were conducting surveillance

on Rodriguez, they observed him doing what appeared to them to be counter-surveillance runs --

also known as heat runs -- which consisted of him driving around in such a way that he would

recognize any law enforcement surveillance vehicles following him.  See Detention Appeal at 2.

The FBI took possession of the SUV later that evening once Rodriguez had left the area, and an

intensive search of the vehicle revealed approximately eighty-seven kilograms -- or roughly 192

pounds -- of marijuana.  See Detention Appeal at 2.

## PROCEDURAL BACKGROUND

A federal grand jury indicted Rodriguez -- along with eleven co-Defendants, who remain

at large in Mexico -- on July 24, 2014.  See Indictment at 1.  The Indictment charges Rodriguez

with a single count of possession of fifty kilograms or more of marijuana with intent to distribute

it -- a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).[4]  See Indictment at 8.  Police in Santa

---

[4]The United States has since filed a Second Superseding Indictment, filed June 17, 2015
(Doc. 64), which retains the possession charge and additionally alleges two new charges:
conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C.
§§ 841(a)(1) and (b)(1)(B), and attempt to possess 50 kilograms or more of marijuana with intent
to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), both charges of which arise
under 21 U.S.C. § 846 -- the statute that criminalizes inchoate drug offenses.  See Second
Superseding Indictment at 8, 9.  Because the United States filed its Notice before superseding the
earlier Indictment, and because, as the Court will describe, the Notice incorporates the earlier
Indictment by reference, the Court will refer to the Indictment rather than the Second
Superseding Indictment.

Teresa, New Mexico, arrested Rodriguez on March 13, 2015, see Arrest Warrant, filed March 18, 2015 (Doc. 27), and his trial is currently set to begin July 6, 2015.

The United States filed both of the motions in limine at issue here on June 26, 2015, a little over a week before trial.  The motions are short, spartan documents, each of which essentially outlines the relief it seeks.  Rodriguez consents, with reservations, to both motions. As to the Anonymity MIL, he stated in his briefing that any danger to the witness could be avoided by the Court clearing the courtroom during her testimony and placing that portion of the record under seal.  See Defendant's Response to the Government's Motion *in Limine* at 1-2, filed June 30, 2015 (Doc. 95).  At the hearing, however, Rodriguez' counsel -- in exchange for the United States informing him of the witness' real name, which he agreed to not divulge to his client or anyone else -- consented to allowing the witness to testify under her cover name.  See Transcript of Hearing at 121:6-123:4 (Castellano, Court, Pori)(taken July 2, 2015).[5]  As to the Hearsay MIL, Rodriguez consented with the reservation that, "should the Government attempt to introduce allegedly inculpatory portions of Mr. Rodriguez's statements during its case in chief, Mr. Rodriguez reserves his right to introduce other portions of the statement consistent with the rule of completeness."  Defendant's Responses to the Government's Motion *in Limine* at 2, filed June 30, 2015 (Doc. 95)("Hearsay MIL Response").

## ANALYSIS

The Court will grant both the Anonymity MIL and the Hearsay MIL.  As to the Anonymity MIL, the Court will allow the United States' witness to testify anonymously, but it will work with Rodriguez to ensure that he retains the ability to cross-examine the witness in a

---

[5]The Court's citation to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

constitutionally adequate fashion.  As to the Hearsay MIL, the Court will not allow Rodriguez to elicit exculpatory hearsay statements, of which he is the declarant, on cross-examination of the United States' witnesses, even if those witnesses first testify about inculpatory statements that Rodriguez made while talking to them.

## I.    THE UNITED STATES' WITNESS MAY TESTIFY ANONYMOUSLY.

The Court will allow the United States' witness to testify under a pseudonym -- the same name she used as an informant during the course of the investigation[6] -- and will bar Rodriguez from asking him or her questions that would reveal identifying information about the witness.  In a case issued just last year, the United States Court of Appeals for the Tenth Circuit described the bar that the United States must clear to have one of its witnesses testify under a pseudonym in a criminal case.  See United States v. Gutierrez de Lopez, 761 F.3d 1123, 1140 (10th Cir. 2014)("Lopez").  In Lopez, the Tenth Circuit held that a witness of the United States may testify anonymously if: (i) the United States demonstrates a threat to the witness' personal safety; and (ii) anonymous testimony does not deprive the defendant of the opportunity for effective cross-examination.  See 761 F.3d at 1140.

Zooming out one analytical level, the Supreme Court of the United States divides Confrontation Clause cases into two categories: (i) cases that implicate the "literal right to 'confront' the witness at the time of trial," which is violated when the witness is not present, Delaware v. Fensterer, 474 U.S. 15, 18 (1985); and (ii) cases in which, although the witness can be cross-examined, defense counsel does not get the opportunity "to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the

---

[6]This solution has the added side-benefit of making the testimony easier to follow for the jury, who will undoubtedly hear other witnesses tell the story using the protected witness' cover name.

witness," <u>Delaware v. Fensterer</u>, 474 U.S. at 19.   Anonymous in-court testimony typically satisfies the "literal right" of confrontation, but it can still result in restrictions that "effectively emasculate" the right, thus failing the Clause's second guarantee.   <u>Smith v. Illinois</u>, 390 U.S. 129, 131 (1968).

The Tenth Circuit held long ago that district courts may limit questioning of certain witnesses to prevent "exposure of the witness to danger," <u>United States v. Smaldone</u>, 484 F.2d 311, 318 (10th Cir. 1973), although it was not until <u>Lopez</u> that the Tenth Circuit set forth a standard for permitting anonymous testimony, specifically.   To satisfy the first requirement of the two-part standard, the United States must show that the witness faces a specific danger and not merely the conjectural possibility of danger.   <u>See</u> <u>Lopez</u>, 761 F.3d at 1141.   The threat's source need not be the defendant himself -- <u>i.e.</u>, in this case, it need not be Rodriguez, personally, who presents the threat -- so long as the threat is sufficiently specific.   <u>See</u> <u>Lopez</u>, 761 F.3d at 1141.   Although "generalized statements that anyone who cooperates in a case with cartel connections faces danger" are inadequate, <u>Lopez</u>, 761 F.3d at 1145, a district court's failure to require the United States to demonstrate a threat with specificity can still be harmless error, provided that the district court gave the defense an adequate opportunity to cross-examine the witness, <u>id.</u> at 1146 (holding that the defense could effectively cross-examine where the government provided "significant impeachment material" on the witnesses).

> The Government may provide an opportunity for effective cross-examination by disclosing a witness's real name to defense counsel while the court still allows the witness to testify under an alias, but this is not the only means to do so.  Rather, courts consider disclosure of a witness's real name as part of a balancing inquiry when applying Smith's exhortation to provide defense counsel with "the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test."

Lopez, 761 F.3d at 1142 (quoting Smith v. Illinois, 390 U.S. 129, 132 (1968)).  Typical solutions involve the provision of impeachment information to the defense, see Lopez, 761 F.3d at 1143 ("Accordingly, if the government provides defense counsel with sufficient background information on the anonymous witness (e.g., criminal history, nationality, etc.), then withholding the witness's name or address does not necessarily deprive the defendant of an opportunity for effective cross-examination."), but the United States can also satisfy the requirements by "disclos[ing] the substance of the testimony" that will be provided, Lopez, 761 F.3d at 1142 (quoting United States v. Ramos-Cruz, 667 F.3d at 501)(internal quotation marks omitted).

Here, the Court is not entirely convinced that the United States' representation that, "[d]uring the course of [its] investigation, four informants have been murdered," satisfies the specific-threat prong.  The Court disfavors anonymous testimony -- moreso than the Tenth Circuit, apparently -- and it has two concerns with accepting the United States' argument.  First, these murders took place in Mexico.  It is possible that the threat of violence is limited to individuals in Mexico and that witnesses in the United States are not at substantial risk.  Second, the United States has not demonstrated risk to the specific witness in question, but, rather, has shown only that an organization implicated in this case has a general tendency to retaliate against adverse witnesses.  Had Rodriguez not consented to the United States' request, the Court would conduct further inquiry before allowing the anonymous testimony.  Rodriguez' consent to the Anonymity MIL, however, obviates the need for deeper inquiry into this prong's satisfaction.  As for the second prong, Rodriguez can mount a fully effective -- let alone constitutionally adequate

-- cross-examination, especially given that his counsel knows the witness' identity and can thus perform background investigations for impeachment material.[7]

The Court will thus grant the Anonymity MIL.  The United States' witness may testify using the name she used during her work as an informant during this case's investigation.

## II.   THE COURT WILL NOT ALLOW RODRIGUEZ TO ELICIT EXCULPATORY HEARSAY, OF WHICH HE IS THE DECLARANT, FROM THE UNITED STATES' WITNESSES ON CROSS-EXAMINATION.

The Court will not allow Rodriguez to bring his own prior words into evidence while cross-examining the United States' witnesses, even if the United States does it first.  Rodriguez' out-of-court statements -- when offered to prove the truth of their assertions -- are hearsay when Rodriguez offers them, see Fed. R. Evid. 801(a)-(c), and thus inadmissible, see Fed. R. Evid. 802, but they are not hearsay when the United States offers them, see Fed. R. Evid. 801(d)(2). See also United States v. Goxcon-Chagal, No. CR 11-2002 JB, 2012 WL 3249473, at *5-7 (D.N.M. Aug. 4, 2012)(Browning, J.).  Rodriguez concedes as much, but states that, "should the Government attempt to introduce allegedly inculpatory portions of Mr. Rodriguez's statements during its case in chief, Mr. Rodriguez reserves his right to introduce other portions of the statement consistent with the rule of completeness."  Hearsay MIL Response at 2.

_____

[7]Had the United States refused to inform Rodriguez' counsel of the witness' identity, that decision would place Rodriguez at the United States' mercy with regard to obtaining impeachment material to use against the witness.  The Court would be less likely to allow the United States to withhold the witness' identity from the defense than from the public, as that decision implicates the criminal defendant's right to a fair trial, rather than just the public's right of access to open judicial proceedings.  The Court notes, however, that, under the legal regime that Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500, create, the defendant's heavy reliance on prosecutorial diligence and good faith in procuring and producing impeachment evidence is par for the course, even when the United States does not seek to withhold any witness' identity.

Rodriguez' reliance on the rule of completeness is misplaced. The rule of completeness -- which has been codified as an actual rule of evidence -- provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part -- or any other writing or recorded statement -- that in fairness ought to be considered at the same time." Fed. R. Evid. 106 (emphasis added). The rule of completeness, thus, applies only to written or recorded statements, and not to oral conversations. Also, the remedy for a breach of the rule of completeness on direct examination is not opening cross-examination to evidence that would otherwise be inadmissible, but, rather, is requiring the party that created the "misleading impression" by "taking matters out of context" to immediately correct the misleading impression within that party's own case. Fed. R. Evid. 106 advisory committee's notes to the 1972 proposed rule.

There is, however, a "related concept to the rule of completeness," which is more apposite to this situation. United States v. Goxcon-Chagal, 2012 WL 3249473, at *4. "When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." Tanberg v. Sholtis, 401 F.3d 1151, 1166 (10th Cir. 2005). "Permissible does not mean mandatory, however; the decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion." Tanberg v. Sholtis, 401 F.3d at 1166. This principle reflects the general proposition that "[c]ross examination 'may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness.'" United States v. Burch, 153 F.3d 1140, 1144 (10th Cir. 1998). "[W]hether or not rebuttal evidence is admissible depends on whether the initial proof might affect the case and whether the rebuttal evidence fairly meets the initial proof." Richie v. Mullin, 417 F.3d 1117, 1138 (10th Cir. 2005)(alteration in original). The

Tenth Circuit has recognized that, when the rebuttal evidence is "otherwise inadmissible," two conditions must be satisfied before it can be introduced under this principle: (i) the inadmissible evidence must "be reasonably tailored to the evidence it seeks to refute"; and (ii) "[t]here must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut." Richie v. Mullin, 417 F.3d at 1138 (quoting United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001))(internal quotation marks omitted). In a case where a wife was seeking damages for loss of companionship in the context of an excessive-force claim, the Tenth Circuit stated that the wife's claim for damages opened the door to evidence of the deceased husband's prior domestic abuse conviction and arrest. See Lounds v. Torres, 217 F. App'x 755, 758 (10th Cir. 2007)(unpublished)("[E]vidence of Alford's 2002 conviction and 2003 arrest for domestic abuse of Ms. Fuston-Lounds was offered not to show his character, but for the proper purpose of rebutting Ms. Fuston-Lounds' claim for damages.").

> Statements are inextricably intertwined when the meaning of a statement, if divorced from the context provided by the other statement, is different than the meaning the statement has when read within the context provided by the other statement. Under those circumstances, a court must take care to avoid distortion or misrepresentation of the speaker's meaning, by requiring that the statements be admitted in their entirety and allowing the jury to determine their meaning.

United States v. Castro-Cabrera, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008)(Pregerson, J.) (citation omitted).

If, for example, the United States sought to distort the meaning of a statement by Rodriguez that he "picked up the car that contained the drugs, but I did not know the drugs were there," by just introducing the first clause of the sentence, the Court would likely allow Rodriguez to bring out the second clause. In this case, however, the United States seeks to introduce inculpatory statements that Rodriguez made to the FBI, without letting Rodriguez get

in the exculpatory statements he made in the same meeting -- which the United States contends

amount to a cover story -- unless he testifies at trial and is subject to cross-examination.

 The Court will thus grant the Hearsay MIL.  The Court will not allow Rodriguez to use

cross-examination to elicit his own prior words, unless they are subject to a hearsay exception,

such as the statement-against-interest exception,[8] see Fed. R. Evid. 804(b)(3); Hearsay MIL at 4-

5 (conceding the applicability of this exception), or unless Rodriguez uses them for a reason

other than to establish the truth of their assertions, see Fed. R. Evid. 801(c)(2).

 **IT IS ORDERED** that: (i) the United States' Motion *in Limine* to Preclude Questioning

of Government Witnesses Regarding Personal Information and Request for Anonymous

Testimony, filed June 26, 2015 (Doc. 86), is granted; and (ii) the United States' Amended

Motion *in Limine* for Pretrial Rule Excluding Irrelevant, Prejudicial, and Inadmissible Hearsay

Statements, filed June 26, 2015 (Doc. 85), is granted.

                _____
                UNITED STATES DISTRICT JUDGE

---

[8]This exception "cover[s] only those declarations within [a larger self-inculpatory] confession that are individually self-inculpatory."  United States v. Williamson, 512 U.S. 594, 598 (1994).  Thus, if Rodriguez' statements to law enforcement contain both inculpatory and exculpatory portions, the United States may introduce the inculpatory portions at trial while omitting the exculpatory portions, and Rodriguez will be unable to introduce the exculpatory portions unless another basis for admissibility exists, e.g., if the United States introduces an inculpatory statement that is so inextricably intertwined with an exculpatory statement that Richie v. Mullin permits the latter's introduction, or if Rodriguez uses the statement for impeachment purposes.  See United States v. Williamson, 512 U.S. at 599 (rejecting the view that a defendant's "entire narrative, including non-self-inculpatory parts (but excluding the clearly self-serving parts), may be admissible if it is in the aggregate self-inculpatory" (citation omitted)).

*Counsel*:

Damon P. Martinez
  United States Attorney
Reeve L. Swainston
    Assistant United States Attorney
United States Attorney's Office for the District of New Mexico
Albuquerque, New Mexico

--and--

Damon P. Martinez
  United States Attorney
Maria Y. Armijo
Randy M. Castellano
    Assistant United States Attorneys
United States Attorney's Office for the District of New Mexico
Las Cruces, New Mexico

        *Attorneys for the Plaintiff*

Brian A. Pori
Federal Public Defender's Office
Albuquerque, New Mexico

        *Attorneys for the Defendant*